UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WENDY SUNE D.,[1] | |
| Petitioner, | Case No. 4:21-CV-00180-DKG |
| v. | **MEMORANDUM DECISION AND ORDER** |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security Administration,[2] | |
| Respondent. | |

# INTRODUCTION

Pending before the Court for consideration is Wendy Sune D.'s Petition for Review of the Respondent's denial of social security benefits, filed on April 23, 2021. (Dkt. 1). The Court has reviewed the Petition for Review, the parties' memoranda, and the administrative record ("AR"). For the reasons that follow, the Court will remand the final decision of the Commissioner of Social Security ("Commissioner") for further proceedings.

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Kilolo Kijakazi is substituted for Andrew Saul pursuant to Federal Rule of Civil Procedure 25(d). Kijakazi became the Acting Commissioner of Social Security Administration on July 9, 2021.

**MEMORANDUM DECISION AND ORDER – 1**

# BACKGROUND

On January 18, 2019, Petitioner protectively filed an application for Title II Disability Insurance Benefits for a period of disability beginning April 30, 2018, based upon physical impairments including herniated and bulging discs in her back, back spurs, arthritis, asthma, dry eyes and mouth, and allergies. (AR 20, 66-67, 249). Her claim was initially denied on May 7, 2019, (AR 66), and again upon reconsideration on July 24, 2019, (AR 79). On May 20, 2020, Petitioner amended the alleged onset date of her disability to January 1, 2017. (AR 79).

On May 21, 2020, a hearing was held before Administrative Law Judge, Wynne O'Brien-Persons. (AR 39-65). After considering testimony from Petitioner and a vocational expert, ALJ O'Brien-Persons issued a decision on June 19, 2020, finding that Petitioner was not disabled. (AR 20-33).

Petitioner requested review by the Social Security Appeals Council, which denied her request for review on February 1, 2021, making the ALJ's decision the final decision of the Commissioner. (AR 1-6). Petitioner timely appealed this final decision on April 23, 2021. (Dkt. 1).

The Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). Petitioner was forty-five years of age at the time of the alleged disability onset and forty-eight years old on the date of the decision. (AR 31, 33, 219). Petitioner has a high school education and reported past work as a day care provider/preschool teacher. (AR 250).

**MEMORANDUM DECISION AND ORDER – 2**

## THE ALJ'S DECISION[3]

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

At step one, the ALJ determined Petitioner had not engaged in substantial gainful activity since the amended alleged onset date, January 1, 2017. At step two, the ALJ found Petitioner had the following severe impairments: degenerative disc disease (lumbar, cervical, with cervical fusion), asthma, obesity, fibromyalgia (FM), and central nuclear myopathy. (AR 22). At step three, the ALJ determines whether a claimant's impairment or combination of impairments meets or medically equals the criteria of an

---

[3] *Kennedy v. Colvin*, 738 F.3d 1172 (9th Cir. 2013), sets forth the five-step review process as follows:
> The five-step process for disability determinations begins, at the first and second steps, by asking whether a claimant is engaged in 'substantial gainful activity' and considering the severity of the claimant's impairments. *See* 20 C.F.R. § 416.920(a)(4)(i)-(ii). If the inquiry continues beyond the second step, the third step asks whether the claimant's impairment or combination of impairments meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1 and meets the duration requirement. *See id*. § 416.920(a)(4)(iii). If so, the claimant is considered disabled and benefits are awarded, ending the inquiry. *See id*. If the process continues beyond the third step, the fourth and fifth steps consider the claimant's 'residual functional capacity' in determining whether the claimant can still do past relevant work or make an adjustment to other work. *See id*. § 416.920(a)(4)(iv)-(v).

738 F.3d at 1175.

**MEMORANDUM DECISION AND ORDER – 3**

impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Appendix 1"). 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. Here, the ALJ determined Petitioner did not have an impairment or combination of impairments that met or were medically equal to the criteria of Listings 1.04 or 11.00. (AR 24-25). The ALJ explained that in making this determination, she considered whether "paragraph B" criteria were satisfied. (AR 23-24).

At step four, the ALJ determined Petitioner retained the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) with the following additional limitations:

> She can occasionally climb ramps or stairs, but she can never climb ladders, ropes, or scaffolds. She can frequently balance, and she can occasionally stoop, kneel, crouch, or crawl. She must avoid concentrated exposure to extreme cold, extreme heat, humidity, and vibration. She must avoid exposure to pulmonary irritants beyond an office setting, and all hazards (e.g., unprotected heights, hazardous moving machinery). The claimant must alternate positions as needed but is able to stay on task.

(AR 26). In reliance upon testimony from the vocational expert, the ALJ found Petitioner would not be able to perform her past relevant work as a daycare owner. (AR 31). Further, the ALJ proceeded to step five and concluded that Petitioner would be able to perform the requirements of representative occupations such as order clerk and sorter and that she would not be precluded from performing her current job as a receptionist, which she has held since September 2019. (AR 32).

### ISSUE FOR REVIEW

The following issue is raised on appeal:

1. Whether the ALJ properly evaluated the medical opinion of Dustin Reno, NP ("NP Reno").

**MEMORANDUM DECISION AND ORDER – 4**

## STANDARD OF REVIEW

On review, the Court is instructed to uphold the final decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

In making its determination, the Court considers the administrative record as a whole, weighing both the evidence that supports and the evidence that does not support the ALJ's conclusion. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). The Court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court considers only the reasoning and actual findings identified by the ALJ and may not affirm for a different reason or based on post hoc rationalizations attempting to infer what the ALJ may have concluded. *Garrison*, 759 F.3d at 1010; *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports Petitioner's

**MEMORANDUM DECISION AND ORDER – 5**

claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

## DISCUSSION

1. **Medical Opinion Evidence**

    a. **Legal Standard**

    New regulations governing an ALJ's evaluation of medical opinion evidence apply to claims filed on or after March 27, 2017. *See* Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 404.1520c. Under the new regulations, the ALJ is no longer required to give deference to any medical opinion, including treating source opinions. *Id.*; *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). Instead, the ALJ evaluates the persuasiveness of the opinions based on several factors. 20 C.F.R. § 404.1520c(a). These are: supportability, consistency, relationship to the claimant, specialization, and other factors. 20 C.F.R.

**MEMORANDUM DECISION AND ORDER – 6**

§ 404.1520c(c)(1)-(5). The most important factors in this evaluation process are supportability and consistency.[4] 20 C.F.R. § 404.1520c(b)(2).

"Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant ... objective medical evidence.'" *Woods*, 32 F.4th at 791-792 (quoting 20 C.F.R. § 404.1520c(c)(1)). "Consistency means the extent to which a medical opinion is 'consistent ... with the evidence from other medical sources and nonmedical sources in the claim.'" *Id.* (quoting 20 C.F.R. § 404.1520c(c)(2)).

Under this framework, the ALJ is required to articulate how persuasive they find the evidence and explain how supportability and consistency were considered. 20 C.F.R § 404.1520c(b)(2). The ALJ may, but is not required to, explain how the other secondary factors were considered, unless he or she finds that two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same." 20 C.F.R. § 404.1520c(b)(3). The ALJ's persuasiveness determination under the revised regulations must be supported by substantial evidence. *See Woods*, 32 F.4th at 787 ("Now, an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence.").

---

[4] "Supportability" is defined as: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). "Consistency" is defined as: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

**MEMORANDUM DECISION AND ORDER – 7**

### b. NP Reno's Medical Opinion

#### i. Examination

NP Reno completed an examination of Petitioner in May 2020. In his exam notes, signed May 7, 2020, NP Reno discussed Petitioner's medical history at length, noting her history of central nuclear myopathy, asthma, anxiety, compartment syndrome to her bilateral legs, brain lesions, multiple orthopedic surgeries, and obstructive sleep apnea. (AR 754). He also considered her complaints of chronic pain and both short- and long-term memory loss. (AR 754). His examination notes indicated that she had chronic pain, fatigue, and paresthesia; poor vision secondary to centronuclear myopathy; chronic history of poorly controlled asthma; and chronic generalized pain, lower extremity weakness, and paresthesia secondary to central nuclear myopathy. (AR 755). NP Reno also noted that Petitioner had an antalgic gait, grade 1 systolic murmur, pain with palpation of musculature, and rated her strength 3/5. (AR 756). Based upon his examination, NP Reno recommended Petitioner "explore options related to alternative therapy for management of her chronic pain, including intravenous infusion such as NAD+"; be "refer[ed] to pain management for eval[uation] and treat[ment]" "[p]ending her response to these infusions"; and that she "seek disability benefits due to the debilitating nature of her medical condition and history." (AR 756).

#### ii. Letter

On May 7, 2020, NP Reno wrote a letter describing Petitioner's "multiple challenges … in her efforts to work and perform duties of her job." (AR 316). He indicated that these challenges were based upon his observations as her employer, noting

**MEMORANDUM DECISION AND ORDER – 8**

that Petitioner "has difficulty physically tolerating sitting at the desk throughout the day and will often need to adjust the chair or computer to accommodate her physical ailments"; that she "has missed work due to her inability to get out of bed due to pain secondary to multiple bulged discs in her back"; that she experiences "significant fatigue … working approx. 25 hours per week resulting in difficulty getting to work at her scheduled time, fatigued appearance, and difficulty concentrating"; and that her "vision and memory are strained, and she often needs [to be] reminded of various tasks." (AR 316). Further, NP Reno indicated that Petitioner will be unable to fulfill his practice's full-time staffing needs due to her "chronic physical ailments." (AR 316). As a result, NP Reno noted that "efforts within the clinic are being made to reduce her hours and responsibilities to better accommodate her disabilities." (AR 316).

    c. **Analysis**

Here, the ALJ considered both NP Reno's May 6, 2020, exam notes and May 7, 2020, letter. After summarizing NP Reno's exam notes, the ALJ found NP Reno's recommendation that Petitioner seek disability benefits "unpersuasive" "because it is based on a one-time exam that revealed some reduced functioning." (AR 30). Additionally, the ALJ summarized the observations contained in NP Reno's letter and found that while NP Reno "wrote that he is reducing her hours and responsibilities to better accommodate her disabilities … he did not provide any details." (AR 30). Finally, ALJ found that NP Reno's opinion was "consistent with the sedentary limitations Dr. Coolidge advanced" of "stand/walk 2 hours; sit 6 hours." (AR 30).

In her decision, the ALJ discussed the persuasiveness factors of supportability and

**MEMORANDUM DECISION AND ORDER – 9**

consistency as required under 20 C.F.R. § 404.1520c(b)(2). As to supportability, while the ALJ did not expressly use the term "supported," she completed an "internal check" of NP Reno's opinion when she evaluated his opinion based upon the contents of his examination notes and letter. (AR 30) (finding NP Reno's assessment and recommendation that Petitioner "seek disability benefits" "not persuasive … because it is based on a one-time exam that revealed some reduced functioning"). As to consistency, the ALJ found NP Reno's opinion to be "incompatible with a light-duty RFC" as assessed by Dr. Cusack but "consistent with the sedentary limitations Dr. Coolidge advanced" of "stand/walk 2 hours; sit 6 hours." (AR 30).

Based upon a thorough review of the record, the Court finds that at least one portion of the ALJ's assessment of NP Reno's medical opinion—specifically, the ALJ's conclusion that NP Reno's assessment of Petitioner is "unpersuasive" "because it is based on a one-time exam that revealed some reduced functioning," (AR 30)—is not supported by substantial evidence. As Petitioner aptly notes, while the record does reflect that NP Reno's examination notes were based upon his May 6, 2020, examination of Petitioner, (AR 754-57), NP Reno's letter, written one day after the examination took place, is based upon his own personal observations of Petitioner over a period of seven months, (AR 316) (Petitioner worked twenty-five hours per week as a part-time receptionist for NP Reno beginning September 2019). During that time, NP Reno "observed multiple challenges … in [Petitioner's] efforts to work and perform the duties of her job" and indicated that due to her impairments, her hours would need to be reduced. (AR 316). This evidence, when considered together with NP Reno's May 6, 2020, examination

**MEMORANDUM DECISION AND ORDER – 10**

notes, indicates that NP Reno's medical opinion was based on more than a mere one-time examination of Petitioner.

Moreover, the ALJ's analysis of NP Reno's medical opinion contains a typographical error, (AR 30) ("This assessment is not persuasive. It because it is based on a one-time exam that revealed some reduced functioning**,**" (emphasis added)), which indicates that the ALJ's full analysis with respect to NP Reno's opinion may have been omitted. While the Court reviews the ALJ's decision as a whole and must uphold the ALJ's decision "if the agency's path may reasonably be discerned," *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) ("Even when an agency 'explains its decision with "less than ideal clarity,"' we must uphold it 'if the agency's path may reasonably be discerned.'" (quoting *Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 497 (2004))), the Court has not been presented with enough information to discern the ALJ's path here. Given the import of this particular section to the ALJ's analysis of the medical opinion evidence and NP Reno's medical opinion specifically, the Court cannot speculate as to what the rest of the ALJ's analysis might have been. As such, this mistake further solidifies this Court's conclusion that the ALJ's assessment of NP Reno's opinion is itself unsupported by substantial evidence.

2. **Harmless Error**

While the Court finds that the ALJ erred in this portion of her analysis of NP Reno's medical opinion, such error may be harmless where it is "inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115. Petitioner asserts that the ALJ's error was not harmless because NP Reno found that even with work

**MEMORANDUM DECISION AND ORDER – 11**

accommodations, Petitioner was unable to maintain a twenty-five-hour workweek schedule. (Dkt. 18 at 16).

An RFC assessment assesses a person's ability to perform work-related physical and mental activities in a work setting for *eight* hours a day, five days a week, or an equivalent work schedule. SSR 96-8p. Here, the ALJ's RFC assessment restricts Petitioner to sedentary work as defined in 20 C.F.R. § 404.1567(a) with the following additional limitations: she can occasionally climb ramps or stairs, but she can never climb ladders, ropes, or scaffolds; she can occasionally balance, stoop, kneel, crouch, or crawl; she must avoid concentrated exposure to extreme cold, extreme heat, humidity, and vibration; avoid exposure to pulmonary irritants beyond an office setting, and all hazards (e.g., unprotected heights, hazardous moving machinery); and she must alternate positions as needed but is able to stay on task. (AR 26).

In light of NP Reno's opinion that Petitioner was unable to maintain her current work schedule of *five* hours a day, five days a week, Petitioner asserts that she would have been found disabled had the ALJ properly credited NP Reno's opinion. (Dkt. 18 at 16). The Court finds that Petitioner has identified an additional restriction contained in NP Reno's report, which, if credited, would require a determination of disability. Thus, Petitioner has demonstrated that the ALJ committed harmful error in her evaluation of NP Reno's report.

### 3. Remand for Further Proceedings

"The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court." *Trevizo v. Berryhill*, 871 F.3d 664,

**MEMORANDUM DECISION AND ORDER – 12**

682 (9th Cir. 2017) (alteration in original) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If an ALJ errs and the record is unclear or ambiguous, the Court should remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017) (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014)). Likewise, if the Court concludes that additional proceedings can remedy the ALJ's errors, it should remand the case for further consideration. *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017) (quoting *Garrison*, 759 F.3d at 1019).

Here, the Court finds that outstanding issues remain as to the ALJ's analysis of NP Reno's medical opinion and the ALJ's RFC assessment. Because the Court cannot say that the ALJ's error in evaluating NP Reno's opinion was harmless, the Court finds that remand for further consideration of this matter is appropriate. Accordingly, the Court directs the ALJ to reevaluate NP Reno's medical opinion evidence consistent with this decision.

## CONCLUSION

Based upon the foregoing, the Court finds the Commissioner's decision is not supported by substantial evidence. Petitioner has met her burden of establishing harmful error with respect to the ALJ's evaluation of the medical opinion evidence in support of her request for remand. Consequently, the ALJ's RFC determination is not supported by substantial evidence. The Court will therefore grant the Petition for Review and order that this matter be remanded for further proceedings.

**MEMORANDUM DECISION AND ORDER – 13**

## **ORDER**

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) The Petition for Review (Dkt. 1) is **GRANTED.**

2) This action is **REMANDED** to the Commissioner for further proceedings consistent with this opinion.

3) This Remand shall be considered a "sentence four remand," consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).

DATED: August 5, 2022

_____
Honorable Debora K. Grasham
United States Magistrate Judge